UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL F., | Case No.:  3:20-cv-00524-AHG |
| Plaintiff, | **ORDER** |
| v. | **(1) RESOLVING JOINT MOTION FOR JUDICIAL REVIEW IN PLAINTIFF'S FAVOR; and** |
| KILOLO KIJAKAZI, Commissioner of Social Security,[1] | |
| | **(2) REMANDING CASE** |
| | **[ECF No. 17]** |
| Defendant. | |

_____

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021. Although Plaintiff originally brought this action against Former Commissioner Andrew Saul, this case may properly proceed against Kilolo Kijakazi pursuant to 42 U.S.C. § 405(g).

Plaintiff Michael F. ("Plaintiff") filed this action on March 20, 2020, seeking review of the Commissioner of Social Security's ("Commissioner") denial of his application for social security disability insurance benefits. ECF No. 1. The parties consented to proceed before a Magistrate Judge on April 9, 2020. ECF No. 6. Pursuant to the Court's Order, the parties filed a Joint Motion for Judicial Review on March 2, 2021, stating their positions on the disputed issues in the case. ECF No. 25. The Court has taken the Joint Motion under submission without oral argument.

For the reasons set forth below, the Court **REVERSES** the Commissioner's denial of benefits to Plaintiff, and **REMANDS** for further proceedings.

## I.   <u>BACKGROUND</u>

Plaintiff was born in 1967, making him an individual "closely approaching advanced age" at the time the decision was rendered. Administrative Record ("AR") at 82. His past relevant work experience is as a Heating and Air Conditioning Installer/Servicer, Electrician Helper, Microcomputer Support Specialist, Automobile Salesperson, and Teacher Aide II. AR 27, 68-71.

On May 26, 2016, Plaintiff protectively filed an application for Social Security Disability Insurance, alleging a disability onset date of June 13, 2014. AR 174-75. The Commissioner denied Plaintiff's claim upon initial review on October 5, 2016, and denied Plaintiff's request for reconsideration of the denial on January 30, 2017. AR 82-105. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on October 3, 2018. AR 35-81. Plaintiff was represented by counsel at the hearing and provided testimony. *Id.* A vocational expert also testified. AR 67-78.

On December 13, 2018, the ALJ issued a decision denying Plaintiff's request for benefits, finding he had not been under a disability from his alleged onset date of June 13, 2014 through the date of the decision. AR 15-29. Plaintiff requested review of the ALJ's decision by the Appeals Council. AR 1-3. When the Appeals Council denied Plaintiff's request for review on January 17, 2020, the ALJ's decision became the final

decision of the Commissioner. *See Sam v. Astrue*, 550 F.3d 808, 810 (9th Cir. 2008). Plaintiff timely appealed the denial to this Court. *See* ECF No. 1; AR 2; 42 U.S.C. § 405(g).

## II.   <u>STANDARD OF REVIEW</u>

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010).

Substantial evidence means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The standard requires "more than a mere scintilla" of evidence, "but less than a preponderance." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). The standard is "highly deferential." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). Thus, "'[w]here evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Burch v. Barnhart*, 400 F.3d 676. 679 (9th Cir. 2005)). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, and is also responsible for resolving any ambiguities in the record. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Id.*; *see also SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

The Court may also overturn the Commissioner's denial of benefits if the denial is based on legal error. *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 929 (9th Cir. 2014). However, even if the Court finds the decision was based on legal error, a court may not reverse an ALJ's decision if the error is harmless, "which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Id.* at 932 (internal quotations and citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).

## III.   SUMMARY OF ALJ'S FINDINGS

### A. The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. § 404.1520;[2] *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

---

[2] Unless otherwise noted, all references to the agency regulations herein are to the regulations in effect at the time of the ALJ's decision. *See, e.g.*, SSR 16-3, 2016 SSR LEXIS 4 n.27 (S.S.A. 2016) ("When a Federal court reviews our final decision in a claim, we expect the court will review the final decision using the rules that were in effect at the time we issued the decision under review."); *Anne B. v. Comm'r, Soc. Sec. Admin.*, No. 1:18-CV-02146-HZ, 2019 WL 6976034, at *8 (D. Or. Dec. 20, 2019) (collecting cases for the proposition that "[t]he applicable regulations are those in effect at the time the ALJ issued his decision"). However, when the Social Security Administration revised its rules regarding the evaluation of medical evidence effective March 27, 2017, the agency made clear that certain revisions would apply only to ***claims filed*** on or after that date. *See generally* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); *see also, e.g.*, 20 C.F.R. §§ 404.1502(a)(6)-(8); 404.1504; 404.1520c; 404.1527. Here, Plaintiff's claim was filed before March 27, 2017, but the ALJ's decision was issued after that date. Therefore, where appropriate, the Court may at times apply an earlier version of a regulation than the one in effect at the time of the ALJ's decision.

1
2
3
4
5
6
7
8
9
10
11

If the claimant is not currently engaged in substantial gainful activity, the second step requires the ALJ to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities, and which has lasted or is expected to last for a continuous period of at least 12 months; if not, a finding of nondisability is made and the claim is denied. *Id. See also* 20 C.F.R. § 404.1509 (setting forth the 12-month duration requirement). If the claimant has a "severe" impairment or combination of impairments, the third step requires the ALJ to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. *Lounsberry*, 468 F.3d at 1114.

12
13
14
15
16

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the ALJ proceeds to the fourth step of the disability evaluation process. The fourth step requires the ALJ to determine whether the claimant has sufficient residual functional capacity ("RFC") to perform his past work. *Id.* Therefore, the ALJ must determine the claimant's RFC before moving to step four.

17
18
19
20
21
22
23
24

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Soc. Sec. Ruling ("SSR")[3] 96-9p, 1996 WL 374184, at *1 (S.S.A. 1996). It reflects the most a claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1); *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996). An RFC assessment must include an individual's functional limitations or restrictions as a result of all of his impairments – even those that are not severe (*see* 20 C.F.R. § 404.1545(a)(1)-(2), (e)) – and must assess his "work-related

25
26
27
28

---

[3] "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

abilities on a function-by-function basis." SSR 96-9p, 1996 WL 374184, at *1; *see also Valentine*, 574 F.3d at 690 ("an RFC that fails to take into account a claimant's limitations is defective"). An ALJ errs when he provides an incomplete RFC that ignores or discounts "significant and probative evidence" favorable to a claimant's position. *Hill v. Astrue*, 698 F.3d 1153, 1161-62 (9th Cir. 2012).

An RFC assessment is ultimately an administrative finding reserved to the ALJ. 20 C.F.R. § 404.1527(d)(2). However, an RFC determination must be based on all of the relevant evidence, including the diagnoses, treatment, observations, and opinions of medical sources, such as treating and examining physicians. 20 C.F.R. § 404.1545. A court must uphold an ALJ's RFC assessment when the ALJ has applied the proper legal standards and substantial evidence in the record as a whole supports the decision. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). At step four of the disability analysis, if the ALJ determines a claimant has sufficient RFC to perform past relevant work, the claimant is not disabled and the claim is denied. *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). The claimant has the burden of proving that he is unable to perform past relevant work at step four. *Id.* If the claimant meets this burden, a *prima facie* case of disability is established. *Id.*

At step five, the burden then shifts to the ALJ to establish that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, taking into account the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c)(1), (c)(2); *see also* 20 C.F.R. § 404.1520(g)(1). The ALJ usually meets this burden either (1) by the testimony of a vocational expert who assesses the employment potential of a hypothetical individual with all of the claimant's physical and mental limitations that are supported by the record, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. *Lounsbury*, 468 F.3d at 1114-15; *Hill*, 698 F.3d at 1162. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; *Tackett*, 180 F.3d at 1099.

### B. The ALJ's Application of the Five-Step Process in This Case

At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity from the alleged onset date of June 30, 2014. AR 17. At step two, the ALJ determined that Plaintiff had the following severe impairments: vertigo, degenerative disc disease of the cervical and thoracic spine, and obesity. AR 17. The ALJ also found that the claimant's mental impairments of "post-traumatic stress disorder (PTSD), depressive disorder, and mood disorder" were non-severe. AR 19.

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the impairments in the Listing. AR 22. The ALJ further determined that Plaintiff has the RFC to do medium work as defined in 20 CFR § 404.1567(c) "with the following exceptions: the claimant is able to stand and walk for four hours in an eight-hour day; he is frequently able to climb ramps and stairs; he is never able to climb ladders, ropes, or scaffolds; he must avoid concentrated exposure to hazards such as operational control of moving machinery and unprotected heights; and he must use a single point cane for balance when walking distances greater than one block (approximately 100 yards)." AR 22.

At step four, based on Plaintiff's RFC and the testimony of the vocational expert, the ALJ concluded that Plaintiff is unable to perform any past relevant work as a Heating and Air Conditioning Installer/Servicer (DOT 637.261-014), Electrician Helper (DOT 829.684-022), Microcomputer Support Specialist (DOT 039-264.010), Automobile Salesperson (DOT 273.353-101), or Teacher Aide II (DOT 249.367-074). AR 27.

At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, considering his age, education, work experience, and RFC. AR 28. Specifically, the ALJ found that Plaintiff could perform the requirements of occupations such as Counter Clerk (DOT 249.366-010), Office Helper (DOT 239.567-010), and Furniture Rental Clerk (DOT 295.357-018). AR 28-29. The ALJ therefore found that Plaintiff was not under a disability from June 13, 2014, through the date of his decision, December 13, 2018. AR 29.

1

## IV.   ISSUE 1: ALLEGED ERROR AT STEP TWO

2       Plaintiff's first claim of error is that the ALJ erred at step two of the disability

3   evaluation by finding that Plaintiff's post-traumatic stress disorder ("PTSD") and major

4   depressive disorder ("MDD") are not severe impairments. ECF No. 25 at 8-16.

5       **A. Legal Standard**

6       As discussed above, the ALJ must consider the medical severity of a claimant's

7   impairments at step two, and must determine whether the claimant has any "severe

8   impairments," which are defined as impairments or a combination of impairments that

9   significantly limit the claimant's physical or mental ability to do basic work activities, and

10  which have lasted or are expected to last for a continuous period of 12 months. 20 C.F.R.

11  §§ 404.1520(a)(4)(ii), (c); 404.1509. "Basic work activities" are defined as "the abilities

12  and aptitudes necessary to do most jobs," which include but are not limited to physical

13  functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or

14  handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and

15  remembering simple instructions; use of judgment; responding appropriately to

16  supervision, co-workers, and usual work situations; and dealing with changes in a routine

17  work setting. 20 C.F.R. § 404.1522(b)(1)-(6).

18      To evaluate ***mental*** impairments specifically at step two, the ALJ applies a "special

19  technique[.]" *See* 20 C.F.R. § 1520a(a)-(c). At the first step of the technique, the ALJ

20  evaluates the claimant's "pertinent symptoms, signs, and laboratory findings to determine

21  whether [the claimant has] a medically determinable impairment [or impairments]." 20

22  C.F.R. § 1520a(b). If the ALJ identifies any medically determinable mental impairments,

23  the ALJ must "specify the symptoms, signs, and laboratory findings that substantiate the

24  presence of the impairment(s) and document [the] findings" in the written decision. *Id.*

25      At the second step of the technique, the ALJ must then "rate the degree of functional

26  limitation resulting from the impairment(s)" in accordance with 20 C.F.R. § 1520a(c),

27  which sets forth four "broad functional areas" in which the ALJ must rate the degree of the

28  claimant's functional limitation. These four broad areas of mental functioning include: (1)

3:20-cv-00524-AHG

understanding, remembering, or applying information; (2) interacting with others; (3) concentration, persistence, and maintaining pace; and (4) adapting and managing oneself. *Id.* Degrees of limitations in each of these four areas are mapped onto a five-point scale: none, mild, moderate, marked, and extreme. *Id.* The ALJ must also document his findings about the degree of the claimant's functional limitations in his written decision. 20 C.F.R. § 1520a(b); *see also id.* § 1520a(e)(4) ("[T]he written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the [four] functional areas.").

If the ALJ finds that the claimant's limitations in all four areas of mental functioning are "none" or "mild," the ALJ "will generally conclude" that the claimant's mental impairment or impairments are not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. § 1520a(d)(1).

The step two inquiry is a "de minimis screening device" used to screen for groundless claims. *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001). At step two, the ALJ must consider the "combined effect of all of the claimant's impairments, without regard to whether each alone was sufficiently severe." *Id.* at 1159. The claimant's illnesses "must be considered in combination and must not be fragmentized in evaluating their effects." *Lester v. Chater*, 81 F.3d 821, 829 (9th Cir. 1995) (quoting *Beecher v. Heckler,* 756 F.2d 693, 694–95 (9th Cir. 1985)). "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that 'has no more than a minimal effect on an individual's ability to work.'" *Smolen*, 80 F.3d at 1290; (quoting SSR 85-28, 1985 WL 56856, at *3 (S.S.A. Jan. 1, 1985)). "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only

when his conclusion is 'clearly established by medical evidence.'" *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quoting SSR 85-28, 1985 WL 56856, at *3).

Even if the Court finds it was error for the ALJ to find a claimant's mental impairments non-severe at step two, such an error may be harmless where the ALJ proceeds to step five of the disability analysis and considers the claimant's mental impairments as part of that analysis. *Davenport v. Colvin*, 608 F. App'x 480, 481 (9th Cir. 2015) (upholding the ALJ's determination that the plaintiff's mental impairments were non-severe at step two, but noting that "any error regarding the step-two determination is harmless" in any event, "because the ALJ proceeded to step five and considered [the plaintiff's] mental impairments as part of the analysis"). However, for such an error to be harmless, the ALJ must have considered how the combination of the claimant's impairments affect his or her ability to perform basic work activities, and must incorporate that consideration into the RFC determination. *See Smolen*, 80 F.3d at 1290-92 (finding reversible error where the ALJ found a severe impairment of scoliosis at step two and proceeded through the full five-step sequential evaluation, but, because the ALJ found the claimant "suffer[ed] from only one 'severe' impairment at step two, the ALJ necessarily failed to consider at step five how the combination of her other impairments . . . affected her [RFC].").  *See also* SSR 85-28, 1985 WL 56856, at *3 ("Although an impairment is not severe if it has no more than a minimal effect on an individual's physical or mental ability(ies) to do basic work activities, the possibility of several such impairments combining to produce a severe impairment must be considered.").

**B. Summary of the Parties' Arguments**

At step two, the ALJ determined that Plaintiff's medically determinable mental impairments of PTSD and MDD "do not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities and are therefore nonsevere." AR 19. Plaintiff argues that the medical evidence demonstrates that Plaintiff's PTSD and MDD are severe mental impairments. Plaintiff's diagnoses of PTSD and MDD stem from experiencing sexual and physical abuse at the hands of a superior officer when Plaintiff

served in the Navy. ECF No. 25 at 8-12. *See also* AR 514, 621 (noting Plaintiff's military sexual trauma). Plaintiff began mental health treatment after his symptoms of vertigo reminded him of the rocking sensation of being on a ship during his time in the Navy, triggering traumatic memories of the abuse. ECF No. 25 at 10 (citing AR 53, 621). *See also* AR 497 (medical source statement from Nurse Practitioner Christina Hom explaining that Plaintiff's depressive symptoms and PTSD symptoms began when he was diagnosed with vertigo in March 2015, but that he had no psychiatric history prior to the vertigo diagnosis).

Plaintiff argues that the medical record establishes that his mental health symptoms as a result of his PTSD and MDD are severe and have lasted over a year, pointing to record evidence that he experiences nightmares three to four times per week, experienced a 60-pound weight fluctuation, is described as feeling "jumpy," only feels comfortable with female providers, avoids interactions with men, has a PHQ-9 depression screening score of 22, equating to "severe" depression, has intrusive memories, feels disconnected from others, has poor concentration, and has frequent confrontational conflicts with men that have led him to losing several jobs. ECF No. 25 at 10-11.

Plaintiff also argues that the ALJ erred when he attributed little weight to the opinions of Plaintiff's treating Nurse Practitioner Christina Hom, and Dr. Jaga Nath Glassman, the agency consultative psychiatric examiner. *Id.* at 12-14. Plaintiff explains that Ms. Hom and Dr. Glassman's opinions support a finding that Plaintiff has a moderate impairment in interacting with others (one of the four broad areas of mental functioning), and thus Plaintiff's mental impairments should have been deemed "severe" under the regulations. 20 C.F.R. § 404.1520a(d)(1).

Plaintiff further contends that had the ALJ adopted an RFC finding that properly incorporated Plaintiff's mental limitations, the Medical-Vocational Guidelines would automatically direct a disability finding under Rule 201.14. *Id.* at 14-15. Related to this claim of error, Plaintiff argues the ALJ erred by failing to consider whether Plaintiff's PTSD and MDD met or medically equaled Listings 12.15 or 12.04 at step three of the sequential evaluation process. *Id.* at 15-16.

In response, Defendant argues that the ALJ's finding that Plaintiff's mental impairments are non-severe and do not affect his ability to perform basic work activities is supported by substantial evidence. Defendant contends that although Plaintiff claims disabling mental limitations, particularly with respect to social interaction, the record shows that Plaintiff was cooperative and respectful during medical appointments. *Id.* at 17, 20. Defendant notes that Plaintiff identified physical, not mental, problems as his chief complaint during the psychiatric consultative examination. *Id.* at 17-18 (citing AR 345). Defendant argues Plaintiff's mental examinations showed normal findings regarding attention, judgment, and insight, and that these "normal objective findings supported the ALJ's step two finding." *Id.* at 19. Defendant notes that medications were helpful for managing Plaintiff's mental health symptoms. *Id.* As for the record evidence on which Plaintiff relies showing that various sources deemed Plaintiff's mental illness symptoms to be "severe" or "moderately severe," Defendant contends that the ratings of severity in the medical record do not correspond to the standards of severity applicable under the Social Security regulations. *Id.* at 20.

Defendant also argues that the ALJ properly weighed the opinions of Ms. Hom and Dr. Glassman, giving them little weight because they were inconsistent with the medical record as a whole. For example, Defendant again relies on record evidence that Plaintiff was generally pleasant and/or cooperative to show that Dr. Glassman's opinion that Plaintiff had more than mild limitations in social interaction is not supported by the records. Although the ALJ did not specifically mention it in his decision, Defendant argues that the ALJ's decision is further supported by the record because it is consistent with the assessment of State agency psychologist David Tessler, Psy.D.

As for Plaintiff's argument regarding the Medical-Vocational Guidelines (the "Grids"), Defendant characterizes it as a "red herring," explaining that, had the ALJ included mental limitations in his RFC determination (as Plaintiff argues he should have), the Grids would not apply except as a framework, because the Grids can only direct a finding of disability or non-disability where a claimant has only exertional limitations.

Defendant also argues that any step three error in not considering whether Plaintiff's mental impairments of PTSD and MDD meet a Listing would be harmless, because Plaintiff would have to establish one extreme limitation or two marked limitations in the four broad functional areas to satisfy Listing 12.04 or 12.15, and the evidence does not support such a finding.

In reply, Plaintiff argues that the fact that Plaintiff identified vertigo as his chief complaint during his psychiatric consultative examination is not relevant. At that examination, Plaintiff also stated that his depression and anxiety lasted more than 18 months and were not going away. Plaintiff points out that Dr. Glassman opined that Plaintiff may not be able to benefit from therapy because of his character dysfunction. Plaintiff also notes his mental health impairments have more than a minimal effect on his ability to work because Plaintiff has lost jobs due to confrontations with men. With respect to the opinion evidence, Plaintiff argues that Dr. Tessler, the State agency consultant, only reviewed a partial set of Plaintiff's medical records because Dr. Tessler did not review Plaintiff's records from mental health treatment at the Veterans Administration.

**C. Analysis**

    i.  <u>The ALJ's finding that Plaintiff's mental impairments are non-severe is not supported by substantial evidence</u>

The Court finds that the ALJ erred in his determination that Plaintiff's mental impairments were non-severe. An impairment may be found "not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen*, 80 F.3d at 1290. An ALJ's determination that an impairment is non-severe must be supported by substantial evidence that the medical evidence clearly establishes no severe impairment or combination of impairments. *Webb*, 433 F.3d at 686.

The ALJ's finding that Plaintiff had no severe mental impairments is not supported by substantial evidence. Plaintiff was treated for PTSD and MDD at Artemis Medical Group and the Veteran's Administration between 2016 and 2018. AR Exs. 6F, 16F, 21F,

24F. Plaintiff's treatment notes from Artemis discuss his PTSD and MDD, noting these symptoms: depressed mood, anhedonia, decreased sleep, low self-esteem, poor energy, poor concentration. AR Ex. 6F, 21F. The treatment notes indicate that Plaintiff was functional in orientation, memory, and attention. AR Ex. 6F, 21F. Plaintiff was prescribed medication for his depression and for his problems sleeping due to recurring nightmares related to PTSD. AR Ex. 6F, 21F.

Plaintiff's treatment notes from the Veterans Administration discuss his PTSD and MDD. AR Ex. 16F. The treatment notes indicate that Plaintiff was generally pleasant and cooperative, with a coherent and logical thought process and intact judgment and insight. AR Ex. 16F. Despite those general observations, Plaintiff's assessments for PTSD and depression indicated that both conditions were moderately severe to severe. Plaintiff had PCL-5 scores for PTSD ranging from 53 to 75 out of 80, with higher scores indicating greater severity. AR 616, 657, 894, 962. Plaintiff had PHQ-9 scores ranging from 15 to 22, which indicates moderately severe to severe depression. AR 616, 658, 896, 918, 962, 965.

Dr. Glassman, a psychiatrist, performed a consultative examination of Plaintiff on September 24, 2016, at the request of the Social Security Administration. AR 344. Dr. Glassman diagnosed Plaintiff with mood disorder and probable dysfunctional personality features. AR 349. The ALJ's weighting of Dr. Glassman's opinion exemplifies the problems inherent in the ALJ's review of the medical record. Dr. Glassman, an examining psychiatrist, opined that Plaintiff "has moderate impairment in his capacity to get along with others, due to his irritable and dysphoric moods." AR 349. Dr. Glassman also noted that Plaintiff's "character dysfunction may make it difficult for him to benefit from therapy." AR 349. The ALJ rejected Dr. Glassman's opinion as "inconsistent with the medical evidence as a whole" because Dr. Glassman also noted that Plaintiff was seen as "pleasant and/or cooperative" throughout the medical record. AR 22. Plaintiff's ability to be pleasant or cooperative with medical personnel who are providing him with treatment does not mean, however, that Plaintiff would have the same ability to be pleasant or cooperative with supervisors, co-workers, or customers in the workplace. The ALJ's

"selective focus" on comments that suggest non-disability does not amount to substantial evidence for the ALJ's determination at step two that Plaintiff's mental impairments are non-severe. *Edlund*, 253 F.3d at 1159.[4]

Significantly, a claimant's impairments "must be considered in combination and must not be fragmentized in evaluating their effects." *Lester*, 81 F.3d at 829. The ALJ failed to consider the effects of all of Plaintiff's medically determinable impairments in combination, particularly Plaintiff's vertigo, PTSD, and depressive disorder. Defendant argues the ALJ properly gave little weight to Dr. Glassman's opinion because Plaintiff told Dr. Glassman during the examination that vertigo was "his biggest problem." AR 346. But Plaintiff also told Dr. Glassman that the vertigo and his depression were linked together. AR 346 ("[Plaintiff] stated that having the vertigo and being unable to work in his usual job has made him depressed and anxious."). By focusing on the first comment without considering it in the overall context, the ALJ failed to consider "the combined effect of all of the claimant's impairments, without regard to whether each alone was sufficiently severe." *Edlund*, 253 F.3d at 1158 (quoting *Smolen*, 80 F.3d at 1280).

The close relationship among Plaintiff's vertigo, depression, and PTSD is consistently documented throughout the medical record. *See. e.g.*, AR 52-53 (Plaintiff's hearing testimony in response to the ALJ's inquiry why he is "only seeking PTSD

---

[4] Defendant argues that the ALJ's rejection of Dr. Glassman's opinion is supported by the opinion of Dr. David Tessler, the non-examining state agency consulting physician. Dr. Tessler opined on October 3, 2016 in the initial disability determination that Plaintiff did not have severe mental limitations. AR 88. Dr. Tessler's opinion was based on a partial review of the medical records, including Dr. Glassman's opinion and the treatment records of Artemis Medical Group. AR 84. Dr. Tessler did not review Plaintiff's records from the Veterans Administration or conduct an examination of Plaintiff. Aside from the fact that the ALJ did not cite to Dr. Tessler's opinion in his decision, reliance on Dr. Tessler would not suffice to support rejecting Dr. Glassman's opinion because "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Lester*, 81 F.3d at 830 (emphasis in original).

treatment now" despite his service ending in 1992, that "my vertigo and the motion [have] triggered more frequent problems; almost nightly" and that "the vertigo just set [the depression] in spiral"); AR 313 (Plaintiff's depression and anxiety occur in the context of his vertigo); AR 346 (Plaintiff's vertigo makes him depressed and anxious); AR 347 (never had any psychiatric treatment prior to the onset of the vertigo); AR 497 (depression began in 2015 with vertigo symptoms; vertigo triggers PTSD because the symptoms mimic a boat rocking at sea); AR 621 (Plaintiff experienced more than one military sexual trauma when "on the boat" between July 1988 and November 1991, and nightmares 1-2 times a week began once he began having vertigo symptoms in March 2015); AR 625 (noting Plaintiff's comment that his mood is "getting slightly better, as long as my vertigo and migraines are under control" and that his depressive and PTSD symptoms began when he was diagnosed with vertigo in March 2015).

Indeed, the ALJ acknowledged the close relationship among Plaintiff's PTSD and depressive symptoms and his vertigo in the ALJ's written opinion. AR 19 (discussing Plaintiff's testimony that his vertigo triggered nightmares occurring three to four times a week, and that Plaintiff's depression was triggered by being out of work and was increased by having vertigo). The ALJ further discussed the medical evidence of record that "indicates that claimant has reported symptoms from his mental impairments, including depressed mood, anhedonia/loss of interest, sleep changes, low self-worth/self-esteem, poor energy, poor concentration, increase in weight, intrusive memories, and irritability." AR 20 (citing to various exhibits in the record).

Nonetheless, the ALJ found that "*other than notes of abnormal mood and affect*, mental status examinations generally revealed normal findings, including normal attention, logical, relevant, organized, and coherent thought process, normal thought content, good judgment, and appropriate insight." AR 20 (emphasis added) (citing Exhibits 3F, p. 3; 6F, p. 3; 16F, p.113; 16F, p. 160; and 24F, p. 21). Additionally, the ALJ pointed to Plaintiff's report that trazadone was effective for sleep and cited to the record for the assertion that

medications were helpful for managing Plaintiff's depressive and PTSD symptoms. AR 20 (citing Ex. 16F at page 126).

The Court finds this reasoning does not constitute substantial evidence to find Plaintiff's mental impairments to be non-severe at step two. First, the ALJ mischaracterizes the record evidence here. The ALJ's citation to Exhibit 16F at page 126 corresponds with treatment notes from Nurse Practitioner Hom from July 24, 2018. AR 627. Although that particular page does not mention anything regarding medication, Ms. Hom's assessment notes one page earlier state that Plaintiff reported his current medication regimen was "helpful for managing depressive and PTSD symptoms of recurring nightmares." AR 626. However, the same assessment notes state that Plaintiff "denies therapeutic benefit" of his medication, "other than reduction in frequency of nightmares from 3 to 5 times/week to 1-2 times/week." AR 625. This evidence does not support a finding that Plaintiff's medications were sufficiently helpful in managing his PTSD and MDD symptoms so as to render them non-severe impairments.

Further, although the ALJ properly identifies that the record consistently establishes that Plaintiff has "abnormal mood and affect," the ALJ skips over that observation to note that Plaintiff's mental status examinations generally reveal "normal findings." AR 20. But the ALJ never explains why the abnormal findings with respect to Plaintiff's mood and affect are insufficient to find that Plaintiff's mental impairments are not severe at step two, i.e., that these abnormalities are only "slight" and have "no more than a minimal effect on an individual's ability to work." *Smolen*, 80 F.3d at 1290. Important here, Plaintiff's mental impairments of PTSD and MDD are repeatedly noted as being related to the sexual abuse he experienced in the military, which has led to difficulty dealing with men in particular. *See* AR 21 (citing to Ex. 5F, p. 4 and 16F, p. 20). However, when citing to evidence that Plaintiff's "mental status examinations generally revealed normal findings," including, e.g., a cooperative and pleasant demeanor, the ALJ cites to treatment notes ***from only female providers.*** *See* AR 315, 350-353, 615-618, 660, 902-906. Therefore, these treatment notes are not reflective of Plaintiff's limitations in the area of interacting with others that

stem from his fear of and avoidance of men, which the ALJ notes have led to Plaintiff losing jobs due to conflicts with male coworkers in the past. AR 21.

Moreover, even if the ALJ could rely on Plaintiff's positive mental status examinations when interacting with female providers to serve as substantial evidence that Plaintiff's mental impairments are not severe, the ALJ improperly cherry-picked these records to indicate that the mental status examinations were more positive overall than they are. This is error. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("As we have emphasized while discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."); *Scott v. Astrue*, 647 F.3d 734, 739–40 (7th Cir. 2011) ("There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce, and that difference is borne out in Dr. Tate's treatment notes. Those notes show that although [the plaintiff] had improved with treatment, she nevertheless continued to frequently experience bouts of crying and feelings of paranoia. The ALJ was not permitted to 'cherry-pick' from those mixed results to support a denial of benefits.").

To illustrate, Exhibit 3F at page 3 and Exhibit 6F at page 3 are both progress notes from Nurse Practitioner Emily Rabinowitz at the Artemis Medical Group, both from August 2016. AR 315, 350-53. During the August 16, 2016 appointment, although the ALJ accurately notes that Ms. Rabinowitz found Plaintiff had normal attention, and logical, relevant, organized, and coherent thought processes, with good judgment and appropriate insight, she also described his mood as "depressed" and included a diagnosis of "moderate" major depressive disorder. AR 315. Similarly, during the August 4, 2016 meeting, the ALJ accurately noted that the mental status examination showed Plaintiff's attention was within normal limits, his thought processes are logical, relevant, organized, and coherent, and that he has good judgment and appropriate insight into his condition. But again, his mood is

described as depressed, and Ms. Rabinowitz deemed him to have moderate MDD. AR 352-353. In these same notes, she also describes Plaintiff's reports of depression symptoms, including depressed mood, anhedonia, decreased sleep, low self-esteem, poor energy, and poor concentration, interfering with his ability to perform all activities of daily living, work, or school. AR 350.

The next record cited by the ALJ is Exhibit 16F at page 113. These are progress notes from VA social worker Lauren Witte dated July 31, 2018, who said Plaintiff was "[p]leasant and cooperative." Despite these general observations of Plaintiff's demeanor, Ms. Witte also administered a PHQ-9 depression screening on the same day, and noted that Plaintiff's score of 16 is "suggestive of moderately severe depression." AR 616. Ms. Witte also administered a PCL-5 that day, a 20-item self-report measure assessing the 20 DSM-5 symptoms of PTSD, with a total score range of 0-80. Plaintiff scored a 63, placing him in the highest category of "very severe symptoms" reported. AR 616-618, 657.

The ALJ also cites to Exhibit 16F at page 160. These are progress notes from VA licensed clinical psychologist Victoria Farrow dated May 16, 2018. Dr. Farrow's notes show that her review of the PCL-5 and PHQ-9 screening tests for PTSD and depression, respectively, indicate that Plaintiff has PTSD symptoms in all clusters, including but not limited to, "nightmares and frequent intrusive memories of [military sexual trauma], avoidance of trauma memories and external reminders (Veteran reports that he has difficult being around men, all his providers are females, no longer has male friends, chooses which checkout line in stores to go to based on whether cashier is male/female); self-blame (states that others on ship were also sexually assaulted, and blames himself for not reporting his own assault), feels disconnected from others; and irritable behavior, hypervigilance, startle response, etc." AR 660. Although the ALJ accurately notes that Dr. Farrow's objective findings show that Plaintiff was "cooperative" with good eye contact, coherent and logical thinking, and good insight and judgment, she also notes his mood is "dysthymic" and his affect "appeared mildly irritable." Further, Dr. Farrow noted that Plaintiff was unwilling to

work with a male provider because he did not feel "ready" to do so, and requested a female provider in the clinic. AR 660-61.

Finally, the ALJ cites to Exhibit 24F at page 21, which are progress notes dated February 13, 2018 from Psychiatric Nurse Practitioner Kendra Bartels at the VA. AR 902-906. The ALJ accurately reported that Ms. Bartels's mental status examination found that Plaintiff has a pleasant demeanor, is cooperative and engaged in the evaluation, has good eye contact, linear and goal-directed thought process, and good judgment and insight. However, these notes again confirm that Plaintiff may have difficulty interacting with men specifically, even if pleasant and cooperative with women. Ms. Bartels notes that Plaintiff's PTSD causes nightmares 1-2 times per week, and that he avoids men and decided to obtain PTSD therapy in Mission Valley due to no female providers available in La Jolla. AR 902.

In finding that Plaintiff nonetheless has only mild limitations in the area of interacting with others (thus supporting his ultimate finding that Plaintiff's mental impairments are non-severe), the ALJ points to treatment notes from Dr. Jaga Glassman, a male doctor, who reported Plaintiff "was well-engaged with him, as evidenced by the claimant making and maintaining good eye contact, and he was cooperative, polite, and respectful in his attitude and demeanor, although the claimant had a slightly irritable tone with a hostile, entitled demeanor and undertone." AR 21. *See also* AR 348 (Dr. Glassman noting "There was a 'bristly,' slightly irritable tone, with a hostile, entitled demeanor and undertone.").

The Court finds that Plaintiff's ability to be cooperative, polite, and respectful to Dr. Glassman during a single consultative examination, while also being bristly, irritable, hostile, and entitled, does not amount to substantial evidence that Plaintiff has only mild limitations in the area of interacting with others and has non-severe mental impairments. "[T]he Ninth Circuit has repeatedly cautioned that reports of improvement in the mental health context must be 'interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace.'" *Cyprain*, 2017 WL 908757, at *7

(quoting *Garrison*, 759 F.3d at 1017). Therefore, when faced with a similar rationale, the *Cyprain* court concluded that the plaintiff's "positive performance on some of her many mental status examinations does not substantiate the conclusion that the medical evidence 'clearly establish[es]' that [the p]laintiff's mental impairments only amount to a 'slight abnormality that has no more than a minimal effect on [her] ability to work.'" 2017 WL 908757, at *7 (quoting *Webb*, 433 F.3d at 686–87). The same reasoning holds true here.

This is not a case where the evidence is "susceptible to more than one rational interpretation," requiring the Court to defer to uphold the ALJ's interpretation. *Orn*, 495 F.3d at 630. All of the relevant medical evidence of record reflecting treatment providers' diagnoses and characterizations of Plaintiff's mental health symptoms supports a finding that Plaintiff's mental impairments were moderate to moderately severe. *See generally* AR Ex. 6F, 16F, 21F, 24F. *See also, e.g.*, AR 656-660 (noting a PCL-5 Score of 63 on a 0-80 point scale, indicating "very severe [PTSD] symptoms reported," and a PHQ-9 Depression Scale Score of 17 on a 0-27 point scale, indicating "moderately severe depression"); AR 806 (explaining that Plaintiff's depressive symptoms of "depressed mood, anhedonia/loss of interest, low self-worth/self-esteem, poor energy, [and] irritability" are "affecting daily activities" and "affecting relationships with others"); AR 808 (diagnosing Plaintiff with "Major Depressive Disorder, Recurrent, Moderate"); AR 905 (noting Plaintiff's "low mood nearly half the days, and anxiety and avoidance behaviors impacting his quality of life"). Even if those descriptions used in the psychiatric tests at the Veterans Administration do not perfectly correspond to the "severe/non-severe" dichotomy of step two, the evidence in the treatment records uniformly shows that they would have more than a minimal impact on Plaintiff's ability to work, and the ALJ does not point to conflicting medical evidence showing otherwise. Therefore, the Court finds that the ALJ's determination at step two that Plaintiff's mental impairments are non-severe was in error.

\\

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ii. <u>The ALJ committed legal error by improperly weighing the opinion of Nurse Practitioner Christina Hom</u>

Moreover, the Court agrees with Plaintiff that ALJ erred by using the wrong standard to weigh the opinion of Nurse Practitioner Christina Hom. Ms. Hom submitted a medical source statement dated September 15, 2018, that notes diagnoses of PTSD and depressive disorder related to Plaintiff's medical condition. AR 497. Ms. Hom stated that Plaintiff's PTSD symptoms began in 2015 when he was diagnosed with vertigo. AR 497. Ms. Hom noted moderate and marked limitations in Plaintiff's ability to interact with others and concentrate, persist or maintain pace. AR 498-99. Ms. Hom opined that Plaintiff's social anxiety, in conjunction with his vertigo, would cause him to be absent from work more than three times per month, and that Plaintiff would be off-task in the workplace more than 20% in an 8 hour workday. AR 500.

The ALJ gave "little weight" to Ms. Hom's opinion because it was not from an "acceptable medical source," and he therefore gave it "less weight than other qualifying medical source opinions." AR 22. In support, the ALJ cites to "20 CFR 404.1513(a)(e)," which is a regulation that does not exist. It is unclear which regulation the ALJ meant to cite, but 20 C.F.R. § 404.1513(a) states that the agency considers evidence under ***20 C.F.R. § 404.1527*** for claims (like Plaintiff's) filed before March 27, 2017. Although a nurse practitioner is not an "acceptable medical source" under section 404.1527(a), a nurse practitioner's opinion should be evaluated as set forth in section 404.1527(f) as an "other medical source." *See Britton v. Colvin,* 787 F.3d 1011, 1013 (9th Cir. 2015) (nurse practitioners are defined as "other sources"); *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014). Section 404.1527(f) requires an ALJ to consider "other medical sources" using the factors listed in section 404.1527(c)(1)-(6), which are the same factors applied to medical opinions from acceptable medical sources, although "not every factor for weighing opinion evidence will apply in every case[.]" 20 C.F.R. § 1527(f)(1). Importantly, this subprovision of the regulation makes clear that "an opinion from a medical source who is not an acceptable medical source . . . ***may outweigh the medical opinion of an acceptable***

*medical source*, including the medical opinion of a treating source." *Id.* The provision draws on the factors set forth in 404.1527(c)(1)-(6) to explain circumstances under which it might be appropriate to give greater weight to the opinion of a non-acceptable medical source than to an acceptable medical source: "For example, it may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often than the treating source, has provided better supporting evidence and a better explanation for the opinion, and the opinion is more consistent with the evidence as a whole." *Id.* (emphasis added). Accordingly, there is no regulatory support for the ALJ's first reason for discounting Ms. Hom's opinion. Her status as a non-acceptable medical source, alone, is not a valid reason for assigning her opinion less weight than qualifying medical source opinions. Additionally, there is no indication that the ALJ considered the factors set forth in 20 C.F.R. § 404.1527(c) in analyzing Ms. Hom's opinion. As a result, the Court finds the ALJ committed legal error with respect to his first reason for discounting the opinion.

The ALJ's second reason for discounting Ms. Hom's opinion is that it is "inconsistent with the medical evidence of record as a whole." AR 22. In support, the ALJ states that the medical record "indicates that the claimant's attention was generally noted as being normal, which does not support a finding of marked limitation in activities related to attention and concentration." AR 22. However, Nurse Practitioner Hom's opinion does not conflict with medical record evidence generally noting that Plaintiff's attention is "normal." In her opinion, the four broad areas of functioning are broken down further into a number of sub-categories, many of which relate to attention and concentration. In most of these sub-categories, Ms. Hom marked that Plaintiff had "none/mild" limitations, including every single sub-category of the understanding, remembering, and applying information category. AR 498-499. These sub-categories include attention-related abilities such as understanding and learning terms, instructions, and procedures; following one or two step oral instructions to carry out a task; describing work activities for someone else; asking and answering questions and providing explanations; and sequencing multi-step

activities. Thus, Ms. Hom's evaluation of Plaintiff's limitations in the category of understanding, remembering, and applying information is consistent with other medical evidence showing that Plaintiff's attention is generally noted as being normal.

In the category of concentration, persistence, and maintaining pace, Nurse Practitioner Hom found "moderate" limitations overall, and only opined that Plaintiff had 'marked' limitations in the sub-categories of completing tasks in a timely manner, working close to or with others without interrupting or distracting them, and working without extra or longer rest periods. Finding marked limitations in these sub-categories of functioning does not necessarily conflict with other evidence "generally not[ing] Plaintiff's attention as being normal," particularly since, when read in context, Ms. Hom's recommended limitations seem to relate more to Plaintiff's vertigo symptoms than to his ability to pay attention or to concentrate, since Ms. Hom opined the vertigo symptoms were "not well controlled" and still affect Plaintiff's activities of daily living such as driving and showering. AR 497. Therefore, the ALJ's conclusion that Ms. Hom's opinion is "inconsistent with the medical evidence of record as a whole" is not supported by substantial evidence.

As a final reason for discounting Ms. Hom's opinion, the ALJ explains that "there is scant evidence in the record" that Plaintiff cannot manage his psychologically-based symptoms, "as there is no evidence of psychiatric hospitalizations or documents incidents of episodes of decompensation." AR 22. However, "[i]npatient psychiatric treatment is not a prerequisite to a finding of severity at step two." *Cyprain v. Colvin*, No. 15-CV-02413-BAS-BGS, 2017 WL 908757, at *6 (S.D. Cal. Mar. 7, 2017) (citations omitted). Therefore, the fact that Plaintiff has never been hospitalized for psychiatric symptoms or had episodes of decompensation is not substantial evidence to find his mental impairments nonsevere. *Id.*

As for whether Plaintiff has had episodes of decompensation, the ALJ appears to conflate the step two and step three inquiries. Whether Plaintiff has had "episodes of decompensation" is a consideration traditionally seen at the step-three analysis of whether

an impairment meets a Listing, not the step-two analysis of whether an impairment is severe. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.04(C)(1) (effective Sep. 29, 2016 – Jan. 16, 2017) (previous version of the Listings providing that a mood disorder meets listing 12.04 if the claimant has a "[m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities," and "repeated episodes of decompensation, each of extended duration"). Indeed, the agency explained that it revised its regulations to remove reference to "periods of decompensation" in the Listings specifically because "decompensation . . . refers to a state of extreme deterioration, often leading to hospitalization. It also suggests that the person is a danger to him- or herself or others. That degree of impairment exceeds what we generally intend in the paragraph C criteria [of the Listings] when we refer to the 'marginal adjustment' that makes a person vulnerable to deterioration in functioning." Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138-01, 66147 (Sep. 26, 2016) (internal quotations and citation omitted). Again, the step two inquiry is a "de minimis screening device" used to screen for groundless claims. *Edlund*, 253 F.3d at 1159. The fact that an impairment has not required inpatient treatment or caused episodes of decompensation improperly heightens the proper applicable standard of whether an impairment is severe, i.e., whether it is only a "slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen*, 80 F.3d at 1290.

Accordingly, the ALJ committed legal error by discounting Ms. Hom's opinion without giving germane reasons for doing so. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (explaining that while a nurse practitioner's opinion "must [] be evaluated [under] 20 C.F.R. § 404.1527(c), the ALJ may discount testimony from these 'other sources' if the ALJ 'gives reasons germane to each witness for doing so.'") (citations omitted).

\\

\\

### D. Impact of Court's Error at Step Two

Having determined that the ALJ erred at step two by failing to find Plaintiff's mental impairments were severe, the Court must still consider whether the error was harmless. As already discussed, such an error may be harmless if the ALJ took Plaintiff's mental impairments into account as he proceeded through the rest of the disability evaluation. *Davenport*, 608 F. App'x at 481. Here, after the ALJ determined Plaintiff's mental impairments were non-severe at step two, he proceeded through the remainder of the disability evaluation process to step five. AR 22-29. However, unlike in *Davenport*, the entirety of the remaining evaluation focuses on Plaintiff's exertional limitations, without consideration of the effects of Plaintiff's mental impairments on his RFC. For example, despite extensive discussion of Plaintiff's vertigo symptoms in determining their effect on Plaintiff's ability to stand, walk, climb, use machinery, and be exposed to unprotected heights, the ALJ never again mentions how the vertigo symptoms might trigger symptoms of Plaintiff's PTSD or MDD, and how the combined effect of these impairments could thus have an impact on Plaintiff's RFC. *See* AR 23-24. The ALJ's RFC determination does not include any nonexertional limitations whatsoever. AR 22. Therefore, the Court cannot say that the ALJ's error at step two was harmless.

The parties disagree regarding what would have occurred if the ALJ had determined that Plaintiff's mental impairments were severe at step two. Plaintiff contends that if the ALJ had adopted an RFC that included Plaintiff's mental health limitations, the Medical Vocational Guidelines would have directed a finding of disability. *See* ECF No. 25 at 14-16; 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.14. Specifically, Plaintiff explains that the ALJ posed a hypothetical question to the vocational expert ("VE") at the hearing that reflects Plaintiff's existing RFC, ***plus*** the additional mental limitation of "only occasional interaction with the general public." AR 73. In response to the hypothetical, the VE found that Plaintiff would not be able to return to his past relevant work, and that only sedentary jobs would be available. AR 73. Thus, under Section 201.14 of Table 2 of the Grids, because Plaintiff is a person of closely approaching advanced age, with a high school

degree, skilled past work, and no transferable skills to sedentary work, Plaintiff contends he must be found disabled. ECF No. 14-15; 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.14. Plaintiff also contends that the ALJ erred at step three by failing to evaluate whether Plaintiff met Listings 12.04 and 12.15 at step three, and that the ALJ erred by adopting a modified RFC for medium work.

Defendant argues that a finding of disability would not be compelled if the ALJ included mental limitations in Plaintiff's RFC because the ALJ could not have used the Grids as more than a framework if that were the case. *See Moore v. Apfel*, 216 F.3d 864, 870 (9th Cir. 2000) ("When a claimant suffers from both exertional and nonexertional limitations, the grids are only a framework and a VE must be consulted."). Instead, the ALJ would have had to consult a VE, which he did. The VE identified sedentary jobs that Plaintiff could perform, even with mental limitations. AR 73-74. Since all of these jobs are unskilled, the question of whether Plaintiff has transferable skills to sedentary work is irrelevant, and a finding of disability is not necessarily directed by the Grids. Defendant also contends that the ALJ did not err by failing to evaluate Listings 12.04 and 12.15 at step three because the ALJ evaluated the relevant criteria in his decision when he considered the four areas of mental functioning, and that the ALJ's modified RFC for medium work is supported by substantial evidence.

The Court agrees with Defendant that the record evidence is insufficient to establish that a finding of disability would be directed under the Grids. As noted by the ALJ in his opinion, transferability of job skills is not material to the determination of disability if the jobs identified at step five are unskilled. *See* SSR 82-41, 1982 WL 31389, at *2 (S.S.A. 1982) (explaining that "[t]ransferability means applying work skills which a person has demonstrated in vocationally relevant past jobs to meet the requirements of other skilled or semiskilled jobs."); AR 28 (the ALJ noting in his opinion that transferability of job skills is not material to his determination of disability, because using the Grids as a framework would support a finding of non-disability whether or not Plaintiff has transferable job skills).

Nonetheless, the record below raises questions regarding the proper weight of the Nurse Practitioner's opinion, whether the Listings would apply, and what an appropriate RFC would be with a correct determination at step two regarding the severity of Plaintiff's mental impairments. For those reasons, the Court will **REVERSE** the Commissioner's decision as to step two. The ALJ is directed to reassess the severity of Plaintiff's mental impairments – PTSD, MDD, and mood disorder – at step two. The ALJ is further directed to reassess Plaintiff's RFC, including all of his relevant limitations, application of the Listings, and proceed thereafter as warranted to steps four and five.

## V.   SECOND ALLEGED ERROR: RESIDUAL FUNCTIONAL CAPACITY

The Court will briefly address Plaintiff's second claim of error to provide further guidance to the administrative agency on remand. In short, the Court finds no error.

As already discussed, the ALJ determined that Plaintiff has the RFC to perform less than the full range of medium work, although all the jobs identified as jobs that Plaintiff can perform at step five are classified as light work. AR 22, 27. Medium work generally involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds, while light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b)-(c). Both medium work and light work generally require standing or walking, off and on, for a total of approximately six hours of an eight-hour workday. SSR 83-10, 1983 WL 31251, at *6 (S.S.A. 1983); *Bailey v. Astrue*, No. EDCV09-1452-OP, 2010 WL 1233459, at *4 (C.D. Cal. Mar. 22, 2010). [5]

---

[5] Because both light and medium work generally require standing or walking for six hours out of an eight-hour day, at first blush, the ALJ's determination at step five appears to conflict with the RFC limitation to standing and walking for only four hours in an eight-hour day. However, the VE testified during the hearing in front of the ALJ that the three "light" jobs the ALJ ultimately identified at step five—counter clerk, office helper, and furniture rental clerk—do not require standing or walking for six hours of an eight-hour workday, and could be performed by a person with an RFC limiting him to standing and walking for only four hours of the workday. *See* AR 73, 75.

1
2
3
4
5
6
7
8
9
10
11
12
13

Plaintiff argues the ALJ erred by adopting a modified RFC for medium work, because the medical evidence shows that Plaintiff is not capable of medium work due to severe degenerative disc disease in his cervical spine and shoulder pain, limiting his ability to lift, walk, and stand. In support, Plaintiff contends that the ALJ improperly weighed the medical opinions and failed to provide specific and legitimate reasons for rejecting the opinion of Plaintiff's treating physician, Dr. Nicole Gullick, who opined that Plaintiff is able to lift and carry only 10 pounds occasionally and frequently, is able to stand and/or walk for less than two hours in an eight-hour workday, and requires the use of a cane to walk any distance. *See* AR 440-443. Dr. Gullick's opinion is controverted by the opinion of one internal medical consultative examiner, Noli Cava, M.D. AR 26. Contrary to Dr. Gullick's findings, Dr. Cava found that the claimant is able to perform work at the medium exertion level, subject to certain exceptions, which the ALJ incorporated into his RFC determination. AR 26, 393-94.

14
15
16
17

Defendant denies that the ALJ committed any error in rejecting the opinion of Plaintiff's treating physician, Dr. Gullick, and gave specific and legitimate reasons for affording her opinion little weight in favor of adopting the limitations proposed by Dr. Cava.

18

## A. Legal Standard

19
20
21
22
23
24
25

Under the regulations, for claims filed before March 27, 2017, the ALJ must generally give more weight to medical opinions from treating sources, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective . . . that cannot be obtained from the objective findings alone or from reports from . . . consultative examinations." 20 C.F.R. § 404.1527(c)(2). Moreover, if a treating source's opinion is well-supported by medically acceptable clinical and laboratory diagnostic

26
27
28

---

3:20-cv-00524-AHG

techniques and it is not inconsistent with other substantial evidence in record, it is entitled to controlling weight. *Id*.

If the ALJ decides not to give a treating-source opinion controlling weight, the ALJ must still determine what weight to give the opinion by balancing a host of factors: the length, frequency, nature, and extent of the treatment relationship; the degree to which the treating source's opinion is supported by relevant evidence and consistent with the overall record; the specialization of the treating source; and any other relevant factors. 20 C.F.R. § 404.1527(c)(2)-(6).

Where, as here, the ALJ rejects a treating or examining physician's opinion that is controverted by another doctor, the ALJ must provide specific, legitimate reasons supported by substantial evidence in the record for doing so. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). To meet this burden, and ALJ must provide a "detailed and thorough summary of facts and conflicting clinical evidence, stating [his] interpretation thereof, and making findings." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Magallanes*, 881 F.2d at 751).

**B. Analysis**

In determining Plaintiff's physical limitations, the ALJ gave "great" weight to the opinion of internal medicine consultative examiner Dr. Cava. AR 26. Dr. Cava opined that Plaintiff can perform medium-exertion work with additional restrictions, including only standing and walking for four hours in an eight hour day; he is frequently able to climb ramps and stairs; he is never able to climb ladders, ropes, or scaffolds; he must avoid concentrated exposure to hazards such as operational control of moving machinery and unprotected heights; and he must use a single point cane for balance when walking distances greater than one block (approximately 100 yards). AR 22, 26, 393-94.

Dr. Gullick's opinion regarding Plaintiff's limitations is dated June 21, 2018. AR 439. At that time, Dr. Gullick had treated claimant for a little over a year. AR 440. In contrast to Dr. Cava's opinion, Dr. Gullick stated that claimant is able to lift and carry only ten pounds occasionally and frequently, he is able to stand and/or walk less than two hours

in an eight-hour workday, he requires the use of a cane for ambulation, he is able to sit for four hours in an eight-hour workday, he needs to alternate standing and sitting every half hour, he is never able to climb, kneel, crouch, or crawl, he is occasionally able to balance and reach, he has limitations with respect to working at heights or around moving machinery or dust, he is likely to be absent from work more than three times a month due to his physical impairments or treatment, and he would be off-task more than twenty percent of an eight-hour workday due to pain or other symptoms. AR 439.

The ALJ gave Dr. Gullick's opinion little weight, finding it was inconsistent with the medical record as a whole. Specifically, as to the lifting restrictions proposed by Dr. Gullick, the ALJ noted that the claimant testified that he is able to lift and carry at least twenty-five pounds *in one hand*. AR 26, 56. This conflict constitutes a specific and legitimate reason for discounting Dr. Gullick's opinion that Plaintiff should be limited to lifting no more than ten pounds. *See, e.g.*, *Santiago v. Saul*, 777 F. App'x 237, 238 (9th Cir. 2019) (finding the ALJ gave specific and legitimate reasons for assigning little weight to a physician's opinion, where the physician opined that the plaintiff could "never lift any items, even including items less than ten pounds," but the plaintiff testified that she could lift between seven and ten pounds); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (noting that the Ninth Circuit has "consistently upheld the Commissioner's rejection of the opinion of a treating or examining physician, based *in part* on the testimony of a nontreating, nonexamining medical advisor[,]" and upholding the ALJ's rejection of two treating physicians' opinions in favor of the opinion of a nontreating, nonexamining medical advisor, where the ALJ "pointed to specific evidence" to support the rejection, including testimony from the plaintiff that conflicted with their opinions) (emphasis in original); *Magallanes,* 881 F.2d at 751–52 (upholding the ALJ's rejection of a treating physician opinion based on "the claimant's own testimony" and the conflicting opinions of other physicians).

The ALJ also noted that despite one instance in which Plaintiff reported pain and spasms painful enough to put him in the fetal position (AR 675), he and Dr. Gullick have

reported that his back pain is improved with treatment. AR 25, 26, 473, 492. In fact, the record evidence to which the ALJ cites indicates that Plaintiff's back pain decreased from nine to five out of ten. AR 473. Thus, the ALJ gave specific and legitimate reasons for discounting Dr. Gullick's opinion regarding Plaintiff's need to be absent from work more than three times per month. *See Warren v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (citing *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983)) (Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for social security benefits).

Because of these findings, the ALJ's decision to limit the claimant to medium work with modifications, rather than adopting the treating physician's assessment that Plaintiff should be limited to sedentary work, was based on specific and legitimate reasons. The Court thus rejects Plaintiff's second claim of error.

## VI.    CONCLUSION

Based on the foregoing analysis, the Court **GRANTS** the Joint Motion for Judicial Review (ECF No. 17) in Plaintiff's favor, **REVERSES** the Commissioner's final decision that Plaintiff is not disabled, and **REMANDS** this action for further administrative proceedings, consistent with this opinion.

Dated:  September 30, 2021

_____

Honorable Allison H. Goddard
United States Magistrate Judge